USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___3/10/2021___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WESLEY WILLIAMS,

                Plaintiff,

v.

CARL J. KOENIGSMANN, et al.,

                Defendants.

14 CV 2498 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Wesley Williams ("Plaintiff") brings this action *pro se* against various State employees and a State a subcontractor, KEPRO, formerly APS (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983 ("Section 1983") for alleged violation of his right to adequate medical care under the Eighth Amendment while he was incarcerated at three separate facilities in New York. Besides KEPRO, the Defendants include Dr. Bernstein, Nurse Practitioner Acrish, and the Green Haven Regional Medical Director[1] (collectively the "Green Haven Defendants), as well as Dr. Koenigsmann, Dr. Whalen, and Nurse Devlin-Varin (referred to collectively, with the Green Haven Defendants, as the "State Defendants"). Before the Court is the State Defendants' motion to partially dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure § 12(b)(6) ("Rule 12(b)(6)") for (1) failure to bring timely claims against the Green Haven Defendants and (2) improper venue. For the following reasons, the Court DENIES Defendants motion but determines *sua sponte* that Plaintiff has failed to state a claim against the Green Haven Defendants

---

[1] Dr. Koenigsmann served as the Green Haven Regional Medical Director during the time period specified in Plaintiff's Amended Complaint. In September 2010, Dr. Koenigsmann was promoted to the position of Chief Medical Officer of the New York State Department of Corrections and Community Supervision ("DOCCS"). Accordingly, Plaintiff sues Dr. Koenigsmann both as the Green Haven Regional Medical Director and the DOCCS Chief Medical Officer.

1

and that transfer of the remaining claims to the Northern District of New York would further the interests of convenience to the parties and justice**.**

## BACKGROUND

The facts herein are drawn from Plaintiff's Amended Complaint. ("AC" (ECF No. 51).)

**I.     Plaintiff's Allegations**

Plaintiff alleges that between January 2009 and December 2013, while he was housed at three separate correctional facilities—Green Haven Correctional Facility ("Green Haven"), Southport Correctional Facility ("Southport"), and Clinton Correctional Facility ("Clinton")—he suffered from Gynecomastia (the enlargement of male breast tissue) and the Defendants improperly denied him surgery (a mastectomy) to treat this condition based on a New York State Department of Corrections and Community Supervision ("DOCCS") policy requiring denial of all mastectomies as cosmetic.

In May 2009, while Plaintiff was at Green Haven, Dr. Bernstein told Nurse Practitioner Acrish that Plaintiff should not have a mastectomy because such surgery was "cosm[e]tic." (AC at 3.) Plaintiff saw an endocrinologist in June 2009, who noted that Plaintiff should "consider surgical consult for pain in breast." (*Id.*) Later that month, Dr. Bernstein reviewed the endocrinologist's report and Nurse Practitioner Acrish referred Plaintiff for a mammogram but told Plaintiff that Nurse Practitioner Acrish was being "pressured by [Dr.] Bernstein to stop putting consultations in for mas[te]ctomy." (*Id.* at 4.) Plaintiff alleges that Nurse Practitioner Acrish "submitted referrals for the dates of July 22-2009, August 31-2009, and J[a]nuary 25-2020 . . . . [but] would not put Plaintiff in for mast[e]ctomy or any pain medication." (*Id.*). In March 2010, the endocrinologist Plaintiff had previously seen again noted Plaintiff's persistent pain and that a mastectomy might be appropriate. (*Id.*) Plaintiff began receiving testosterone treatments in April 2010. (*Id.*)

At some point, Plaintiff was transferred to Southport.[2] (*Id.*) In February 2011, a doctor referred him to a new endocrinologist. (*Id.*) In March 2011, that new endocrinologist noted that Plaintiff suffers from pain. (*Id.*) Plaintiff saw a different endocrinologist in September 2011 who noted ongoing pain and recommended a surgery referral. (*Id.*) In October 2011, Dr. Whalen approved a drug treatment for Plaintiff. (*Id.* at 5.) Dr. Desimone noted in January 2012 that Plaintiff still had painful Gynecomastia, had not seen a surgeon yet, and that the condition was unlikely to improve on its own. (*Id.*) In September 2012, Dr. Desimone told Plaintiff that his request for surgery had been denied. (*Id.*)

Plaintiff was transferred to Clinton in October 2012. Plaintiff continued complaining about breast pain and saw a new endocrinologist in March 2013 who indicated that Plaintiff's condition required surgery and was not cosmetic and also placed Plaintiff on a drug to remove breast tissue. (*Id.*) Later that month, the same endocrinologist indicated that Plaintiff still had painful Gynecomastia but that the surgery was denied as "cosm[e]tic." (*Id.*)

In September 2013, Plaintiff again requested a mastectomy due to ongoing pain. (*Id.* at 6) That request was denied by Dr. Whalen who indicated that the request needed to explain the painful circumstances. (*Id.*) Plaintiff saw the endocrinologist again in November and the endocrinologist noted that the drug did not help to reduce breast size and that surgery was required because the condition was not merely cosmetic. (*Id.*) The surgery was again denied as "unable to approve due to . . . Guidelines." (*Id.*) In early December 2013, Dr. Whalen told the nurse that pain was insufficiently discussed in the surgery request, which the nurse disputed, and Nurse Susan Devlin Varin replied that Plaintiff's request was denied but more information was requested. (*Id.* at 7.)

---

[2] Defendants note that in September 2010, Dr. Koenigsmann changed roles from Regional Medical Director of Green Haven to DOCCS Chief Medical Officer.

The nurse and a doctor put in a new surgery request a few days later, the denial of which noted "no clear need." (*Id.*)

Plaintiff alleges that during Dr. Koenigsmann's time as Chief Medical Officer of DOCCS, he created a policy against providing male inmates with mastectomies, which Dr. Koenigsmann considers cosmetic, and which has been the basis for the repeated denials of Plaintiff's requests for surgery, against the recommendations of the endocrinologists that Plaintiff has seen. Plaintiff further alleges that outside vendor KEPRO, formerly APS, has denied several surgical requests, including in May 2014.

Finally, Plaintiff alleges that the pain caused by the failure to treat his condition surgically has impeded his ability to bow in prayer to comply with his Muslim faith, and he is no longer able to engage in physical activities such as jumping and jogging, which now cause "extreme pain." (*Id.* at 9-10.)

## II. Procedural History

Plaintiff filed his Complaint on April 7, 2014. (ECF No. 2.) The Court granted his request to proceed *in forma pauperis* (ECF No. 6) and directed the Clerk of Court and the U.S. Marshals to affect service on his behalf (ECF No. 7). The Court granted Defendants leave to file a motion to dismiss (ECF No. 21) and that motion was filed on February 19, 2015 (ECF No. 25). While that motion was pending, the Court granted Plaintiff leave to file a motion to amend his complaint. (ECF No. 31.) By Opinion and Order dated July 16, 2015, the Court denied Defendants' motion, holding that Plaintiff had stated claims against the Defendants, all of whom were involved in Plaintiff's treatment at Green Haven. (ECF No. 34.) The Court subsequently granted Plaintiff leave to file his Amended Complaint (ECF No. 50) and his Amended Complaint was filed on June 10, 2016, adding additional defendants with whom Plaintiff interacted at Clinton (ECF No. 51). The Court directed the Clerk of Court and the U.S. Marshals to serve the additional defendants. (ECF

4

Nos. 53, 54.) Defendant KEPRO, formerly APS, answered the Amended Complaint. (ECF No 58.) The Court subsequently granted the State Defendants leave to file a motion to dismiss the Amended Complaint. (ECF No. 78.) The State Defendants filed the instant motion on July 21, 2020. (ECF No. 79.)

## LEGAL STANDARD

Under Rule 12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint, including documents that a pro se litigant attaches to his opposition papers, statements by the plaintiff submitted in response to a defendant's request for a pre-motion conference, and documents that the plaintiff either possessed or knew about and upon which he or she relied in bringing the suit." *Gayot v. Perez*, No. 16-CV-8871 (KMK), 2018 WL 6725331, at *4 (S.D.N.Y.

Dec. 21, 2018) (internal quotation marks, alterations, and citations omitted). In other words, the Court may "consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

A court must read a pro se complaint liberally, interpreting it "to raise the strongest arguments that [it] suggest[s]." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010). A motion to dismiss a pro se complaint should only be granted if the complaint raises no plausible right to relief under any set of facts the plaintiff could plausibly prove. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A liberal construction of a pro se plaintiff's complaint and submissions is especially important if it includes an allegation of civil rights violations. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Nonetheless, a pro se plaintiff's complaint must plausibly set out entitlement to relief with sufficient factual allegations, *Jackson*, 709 F. Supp. 2d at 224, and courts are not required to re-write pro se complaints or ignore the lack of an element essential to an entitlement to relief, *Geldzahler v. N.Y. Medical Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## DISCUSSION

### I. Section 1983 Claims

#### A. Legal Framework

Section 1983 provides, in relevant part: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09 Civ. 5446, 2013 WL

6

1803896, at *2 (S.D.N.Y. April 25, 2013); *accord Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

### 1. Statute of Limitations

The statute of limitations for Section 1983 claims filed in New York is three years. *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 308 (2d Cir. 2020). "A Section 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of the harm." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (quotation marks omitted); *see also Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) ("[F]ederal law, which governs the date of accrual of federal claims . . . establishes as the time of accrual that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." (internal quotation marks and citation omitted)). "A claim of deliberate indifference of medical needs brought under [§] 1983 accrues when [adequate] medical treatment is denied." *Simmons v. Mason*, No. 17-CV-8886 (KMK), 2019 WL 4525613, at *7 (S.D.N.Y. Sept. 18, 2019) (quoting *Miles v. City of New York*, No. 14-CV-9302, 2018 WL 3708657, at *10 (S.D.N.Y. Aug. 3, 2018)). Where statute of limitations is raised in support of a motion to dismiss, "dismissal is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999).

### 2. Deliberate Indifference to Serious Medical Need

In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must allege "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference includes both subjective and objective components: first, "the alleged deprivation must be, in objective terms, 'sufficiently serious,'" *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994) (citation omitted), and second, the defendant must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

7

exists, and he must also draw the inference" *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). "[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003). "[M]ere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

**B.    Application**

### 1. Timeliness of Plaintiff's Claims Against the Green Haven Defendants

Defendants aver that Plaintiff's claims regarding events prior to April 7, 2011 (three years before the initial complaint was filed) are untimely. Plaintiff counters that his claims are timely because they accrued on September 9, 2012, the date he first learned that a request for surgery had been denied based on the DOCCS policy that all mastectomies are cosmetic, and that since he did not know about the denials prior to that date, he could not have brought his claims before then. (Opp'n Mem at 3 (ECF No. 81).) As explained below, the Court agrees with Plaintiff.

Plaintiff's claims accrued when, in September 2012, Dr. Desimone told Plaintiff that his request for surgery had been denied because this reflected the first instance where Plaintiff was diagnosed with a medical condition that required a particular course of treatment and such treatment was denied. Dr. Desimone allegedly noted in January 2012 that, having already tried unsuccessful non-surgical options, Plaintiff's condition was unlikely to improve on its own—the first allegation that such surgery was medically required—and that the first alleged denial was subsequently reported to him in September 2012 by Dr. Desimone. *See e.g.*, *Anderson v. Romano*, No. 08CIV.00559(JSR)(KNF), 2009 WL 602965, at *3 (S.D.N.Y. Mar. 6, 2009) (holding that deliberate indifference claim accrued when plaintiff learned that he had been diagnosed three years

prior with Hepatitis C); *Candelaria v. Cunningham*, No. 98 CIV. 6273 (LAP), 2000 WL 1808574, at *2 (S.D.N.Y. Dec. 11, 2000) (holding that prisoner's deliberate indifference claim accrued when he was diagnosed with renal failure, not when he first started complaining of symptoms of kidney disease and noting that a determination that the claim accrued when a plaintiff suspected a medical issue rather than when he or she was diagnosed "would encourage prisoners to initiate lawsuits upon mere suspicion of medical injury causing premature and often unnecessary litigation"). Even if Plaintiff's Amended Complaint alleges that DOCCS's policy of denying mastectomies as cosmetic pre-existed September 2012, Plaintiff first learned that the policy was improperly applied to him in September 2012. Under these circumstances, the Court concludes that Plaintiff's claims accrued in September 2012 and, accordingly, that the claims he brought in 2014, less than three years later, were timely.

### 2. Failure to State a Plausible Claim Against the Green Haven Defendants

The Court considers *sua sponte* whether Plaintiff has stated a claim against any of the Green Haven Defendants.[3] Even assuming that Plaintiff satisfies the objective element, his claim is facially deficient because he has not alleged that any of the Green Haven Defendants knowingly or recklessly denied him constitutionally adequate treatment. Instead, the Amended Complaint alleges that, even after Dr. Bernstein allegedly told Nurse Practitioner Acrish that any surgery

---

[3] While Defendants have not moved to dismiss the complaint for failure to state a claim, a "district court has the power to dismiss a complaint *sua sponte* for failure to state a claim on which relief can be granted" where the Plaintiff has had an opportunity to be heard. *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991). Plaintiff has been afforded such an opportunity where the Court granted him leave to amend his complaint, which he did, and has considered Plaintiff's opposition to the motion to partially dismiss for failure to state a timely claim, in which Plaintiff argues that his claims did not accrue until 2012 when he was informed that a request for surgery had been denied, essentially conceding that, prior to that date, he had not been denied constitutionally adequate care.

9

might be denied as cosmetic, Plaintiff was sent for a mammogram, saw an endocrinologist in June 2009 and March 2010, and started a non-surgical hormone treatment in April 2010. In other words, Plaintiff was evaluated for and received some treatment while at Green Haven.

The Amended Complaint further alleges that Plaintiff first learned in January 2012 from Dr. Desimone—when he was already residing at Southport—that his condition was unlikely to improve without surgery. Plaintiff does not allege that any medical providers reached the conclusion that a mastectomy was medically necessary prior to Dr. Desimone's. *See Thomas v. Westchester Cnty.*, No. 12-CV-6718 CS, 2013 WL 3357171, at *6 (S.D.N.Y. July 3, 2013) (noting that plaintiff failed to meet subjective prong in part because he failed to allege that any other medical professional questioned treating doctor's decision to treat plaintiff's pain with over-the-counter medication). Accordingly, any allegations regarding denial of surgery prior to Dr. Desimone's determination that surgery was likely required amount to "disagreements over medications, diagnostic techniques (*e.g.*, the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, [and] are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment."[4] *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*,

---

[4] To the extent that pro se Plaintiff means to allege that the Green Haven Defendants committed medical malpractice because adherence to a reasonable standard of care would have identified his need for surgery earlier, any malpractice claim as to the Green Haven Defendants is untimely where he was transferred out of Green Haven in 2011 at the latest and has not alleged further interaction with the individual Green Haven Defendants. *See, e.g.*, *Young v. N.Y.C. Health & Hosps. Corp.*, 91 N.Y.2d 291, 295 (1998) (noting that notice of claim must be filed within 90 days of the date the alleged original negligent act or omission occurred and further that medical malpractice actions must be commenced within 2.5 years "from the date of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to said act, omission or failure" (quoting N.Y. C.P.L.R. 214-a)).

151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *see, e.g. James v. Gage*, No. 15-CV-106 (KMK), 2018 WL 2694436, at *11 (S.D.N.Y. June 5, 2018) ("denials of a cane, crutches, or the medication of Plaintiff's choice, at least in the absence of allegations that a doctor had already prescribed Plaintiff these items, do not violate the Eighth Amendment").

Accordingly, the Court must dismiss the claims against the Green Haven Defendants because Plaintiff has not stated a plausible claim that any of the Green Haven Defendants were deliberately indifferent to his serious medical needs.

**II.     Venue**

Defendants aver that if the Court dismisses the claims against the Green Haven Defendants, the Court should transfer the remaining claims to the Western or Northern District of New York. Plaintiff's opposition does not address venue. "[T]he purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979). Accordingly, a civil action may be brought in, inter alia, "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b). For purposes of venue, state employee defendants are considered residents of the district in which they work. *Miller v. Annucci*, No. 17-CV-4698 (KMK), 2019 WL 4688539, at *9 (S.D.N.Y. Sept. 26, 2019). Here, all Defendants except one are state employees represented by the New York Attorney General. Since the one non-state Defendant, KEPRO, formerly APS, is based in Pennsylvania, venue must be determined under 28 U.S.C. § 1391(b)(2).

While venue in the Southern District was appropriate given the alleged nexus between this district and the underlying allegations, the Court will nonetheless consider whether venue transfer

is appropriate in light of its decision to dismiss the claims against the Green Haven Defendants. Even if venue is proper, a court may, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The transfer may be made upon motion by either party or by the court *sua sponte*." *Mobil Corp. v. S.E.C.*, 550 F. Supp. 67, 69 (S.D.N.Y. 1982). Where Section 1404(a) transfer is raised *sua sponte*, "[t]he parties should be provided notice and an opportunity to be heard." *Id.* In determining whether to transfer, courts first inquire "whether the action could have been brought in the transferee district." *Nelson v. Wells Fargo Bank, N.A.*, No. 17-CV-4045, 2019 WL 2514229, at *7 (S.D.N.Y. June 18, 2019). If the transferee district would be permissible, courts then consider whether a transfer would promote:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Id.* (citation omitted). "The convenience of the parties and non-party witnesses is generally viewed as the most important factor, as it is specifically enumerated in the venue transfer statute." *Solar v. Annetts*, 707 F. Supp. 2d 437, 442 (S.D.N.Y. 2010 (citing 28 U.S.C. § 1404(a)).

Here, Defendants sought transfer for improper venue under Federal Rule of Civil Procedure 12(b)(3) or 28 U.S.C. § 1406. As the Court has already determined, the Southern District of New York—as well as the Western and Northern District of New York—were all proper venues in which Plaintiff could have filed this suit because significant events or omissions relevant to Plaintiff's claim occurred in all three districts. Defendants explicitly challenged venue in their motion to dismiss and Plaintiff was provided an opportunity to respond to Defendants' arguments,

even if he chose not to address venue in his opposition to the motion. Accordingly, the parties have had an opportunity to be heard on the issue of venue.

The Court finds that transfer to the Northern District of New York would serve the interest of justice and convenience of the parties. First and foremost, this action could have been brought in the Northern District in the first instance. Second, the docket indicates that Plaintiff is currently residing at Upstate Correctional Facility, which is located in the Northern District of New York. (ECF No. 75.) *See, e.g.*, *Baez v. Malin*, No. 18-CV-2850 (KMK), 2020 WL 1445704, at *14 (S.D.N.Y. Mar. 25, 2020) (noting that plaintiff's current incarceration in the Northern District weighed in favor of transfer from Southern District to Northern District); *see also Miller*, 2019 WL 4688539, at *10 (noting that plaintiff's incarceration in Western District of New York, which is closer to Northern than to Southern Districts weighed in favor of transfer from Southern to Northern District); *accord Solar*, 707 F. Supp. 2d at 442. Third, as to the "locus of the operative facts . . .all acts or omissions for which Defendants could be held liable occurred at" Southport in the Western District and Clinton in the Northern District. *Solar*, 707 F. Supp. 2d at 442. Finally, to the extent that documents relating to Plaintiff's time at Green Haven or Southport are located outside of the Northern District, with electronic production capacity, the location of such documents "is mostly a neutral factor," *Miller*, 2019 WL 4688539, at *10, and, moreover, any documents outside of the Northern District are "easily portable because each facility that has housed [Plaintiff] is part of the New York State Department of Corrections," *Solar*, 707 F. Supp. 2d at 442 (quotation marks and citation omitted).

Accordingly, having dismissed the claims involving the Green Haven Defendants, the Court determines that the balance of the factors weighs in favor of transferring this action to the Northern District of New York.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion and *sua sponte* dismisses all claims against the Green Haven Defendants. The Court further orders that this matter should be transferred to the Northern District of New York for adjudication of the remaining claims.

The Clerk of the Court is respectfully directed to (1) terminate the motion at ECF No. 79; (2) terminate Defendants Green Haven Regional Medical Director, Dr. Bernstein, and Nurse Practitioner Acrish; (3) mail a copy of this Opinion and Order to Plaintiff at the address listed on ECF; (4) show service on the docket; and (5) transfer this matter to the Northern District of New York for further adjudication.

Dated:   March 10, 2021                                          SO ORDERED:
         White Plains, New York

                                                                 NELSON S. ROMÁN
                                                                 United States District Judge