**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────

WESLEY WILLIAMS,

                      Plaintiff,

     v.

CARL J. KOENIGSMANN, et al.,

                  Defendants.

No. 9:21-CV-0302
(TJM/CFH)

─────────────────────────────

**APPEARANCES:**                    **OF COUNSEL:**

WESLEY WILLIAMS
06-A-3252
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953
Plaintiff pro se

Attorney General for the          DAVID C. WHITE, ESQ.
State of New York                 Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for defendants Koenigsmann,
Whalen, and Devlin-Varin

Brown, Gruttadaro & Prato, PLLC   JOHN MATTHEW CONIGLIO, ESQ.
19 Prince Street
Rochester, New York 14607
Attorney for defendant KEPRO

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

─────────────────────────

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Plaintiff <u>pro se</u> Wesley Williams ("Williams" or "plaintiff"), who was, at all relevant times, in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 against Defendants Carl J. Koenigsmann ("Koenigsmann"), KEPRO,[2] Timothy E. Whalen ("Whalen"), and Susan Devlin-Varin ("Devlin-Varin"), for violations of his Eighth Amendment rights. <u>See</u> Dkt. No. 51 ("Am. Compl."). Presently before the Court is a motion for summary judgment filed by defendants Koenigsmann, Whalen, and Devlin-Varin (collectively, where appropriate, "defendants"). <u>See</u> Dkt. No. 97. For the following reasons, it is recommended that defendants' motion for summary judgment be granted in part and denied in part.

## I. Failure to Respond

On November 23, 2021, Williams was notified of the pendency of defendants' motion and the consequences of failing to respond. <u>See</u> Dkt. No. 98. To date, Williams has failed to respond to the motion.

Given this notice, it is readily apparent that Williams was adequately apprised of the pendency of the motion and the consequences of failing to respond. "Where a non-movant fails to adequately oppose a properly supported factual assertion made in a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that non-movant is

---

[2] In his Amended Complaint, plaintiff named "APS, The outside vendor retained by DOCCS." Dkt. No. 51 at 1. In its Answer, defendant is identified as KEPRO. <u>See</u> Dkt. No. 58 at 1. The Clerk of the Court is directed to amend the caption accordingly.

2

proceeding *pro se*." Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 209 (N.D.N.Y.2008) (footnotes omitted).

At the end of Williams' amended complaint, it states, "I declare under penalty of perjury that the foregoing is true and correct[]" but it is not signed or verified. See Am. Compl. at 13; see also Tafari v. Brown, No. 9:10-CV-1065 (GTS/DRH), 2012 WL 1098447, at *6, n.8 (N.D.N.Y. March 30, 2012) (explaining that a complaint that is not signed or verified "does not have the force and effect of an affidavit"). However, his affidavit of service which is submitted as the next page of his Amended Complaint is signed and notarized. See Am. Compl. at 14. Further, at his deposition, plaintiff authenticated the amended complaint and read from the pleading during his testimony. See Dkt. No. 97-3 at 16-17, 41-43, 54. Defendants do not dispute the accuracy of the pleading and rely upon the facts set forth in the amended complaint in support of the motion. See Dkt. No. 97-1 at 3-4; Dkt. No. 97-2. Therefore, the undersigned will accept the pleading as an affidavit to the extent that the statements are based on Williams' personal knowledge. See Berry v. Marchinkowski, 137 F. Supp. 3d 495, 530 (S.D.N.Y. 2005) (collecting cases to support the proposition that a court may consider unsworn assertions on a motion for summary judgment where they are based on the plaintiff's personal knowledge and in light of special solicitude).

## II.  Background

### A. Facts

In support of the motion, defendants filed a Statement of Material Facts.[3]  Dkt. No. 97-2.  The facts set forth in defendants' Rule 56.1(a) Statement of Material Facts are accepted as true as to those facts that are not disputed by the facts set forth in the amended complaint.  N.D.N.Y. L.R. 56.1(b) ("The Court may deem admitted any properly supported facts set forth in the Statement of Facts that the opposing party does not specifically controvert.") (emphasis omitted).  The facts recited herein are for the relevant time period as referenced in the amended complaint and are related in the light most favorable to Williams as the nonmoving party.  See subsection III(A) infra.

The incidents that form the foundation for this action allegedly occurred while Williams was confined at Green Haven Correctional Facility ("Green Haven C.F."), Southport Correctional Facility ("Southport C.F."), and Clinton Correctional Facility ("Clinton C.F.").  See generally Am. Compl.; see also Dkt. No. 83 at 2.

---

[3]  Local Rule 56.1 (formerly L.R. 7.1(a)(3)) states:
Summary Judgment Procedure
(a) Statement of Material Facts: Any motion for summary judgment shall contain a separate Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits. Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.
The moving party shall also advise pro se litigants about the consequences of their failure to respond to a motion for summary judgment.  See also L.R. 56.2. For the recommended Notification of the Consequences of Failing to Respond to a Summary Judgment Motion, visit the District's webpage at Notification of Consequences.
(b) Response to Statement of Material Facts: The opposing party shall file a separate Response to the Statement of Material Facts. The opposing party response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert. In addition, the opposing party's Response may set forth any assertions that the opposing party contends are in dispute in a short and concise Statement of Additional Material Facts in Dispute, containing separately numbered paragraphs, followed by a specific citation to the record where the fact is established. The moving party may reply to the opposing party's contended assertions in a separate Reply Statement and/or its Reply Memorandum of Law.

From an early age, Williams suffered from complications caused by gynecomastia, a hereditary condition that induces male breast enlargement.  See Am. Compl. at 3; Dkt. No. 97-3 at 23.[4]  In January 2009, while confined at Green Haven C.F., Williams submitted a sick call request due to pain in his breast.  See Am. Compl. at 3.  In April 2009, Williams was examined by Nurse Practitioner Albert Acrish ("Acrish").[5]  See id.  Acrish submitted a request for a consultation with an endocrinologist.  See id.; Dkt. No. 97-3 at 43-44, 50-51.  In May 2009, Dr. Frederick Bernstein ("Dr. Bernstein")[6] informed Acrish that a mastectomy was a "cosm[e]tic" procedure and that "he should not go ahead with surgery."  Am. Compl. at 3; Dkt. No. 97-3 at 51-52.  In June 2009, Williams was transferred to Fishkill Hospital for a consultation with an endocrinologist.[7]  See Am. Compl. at 3; Dkt. No. 97-3 at 55-56. The doctor noted, "[p]atient has painful gynecomastia [. . .] consider surgical consult for pain in breast."  Dkt. No. 97-3 at 55.  In June 2009, due to "[p]ainful[] gynecomastia," Acrish scheduled a mammogram.  Am. Compl. at 4.  Williams underwent a mammogram, which was negative for cancer.  See Am. Compl. at 4; Dkt. No. 97-3 at 63.  In December 2009, Williams was transported to the Green Haven C.F. hospital for breast pain.  See Am. Compl. at 4; Dkt. No. 97-3 at 65.

In March 2010, Williams was seen by an endocrinologist,[8] who recommended a mastectomy for persistent "pain in breast."  Am. Compl. at 4.  In April 2010, Williams began receiving testosterone injections.  See id.; Dkt. No. 97-3 at 35-36, 39.

[4] Citations to page numbers refer to the pagination generated by CM/ECF, not the page numbers generated by the parties.
[5] As discussed infra, Acrish was terminated as defendant.
[6] As discussed infra, Dr. Bernstein was terminated as a defendant.
[7] Plaintiff could not recall the name of the endocrinologist.  See Dkt. No. 97-3 at 51.
[8] The name of the endocrinologist is not in the record.

In February 2011, after Williams was transferred to Southport C.F., he submitted a sick call request and was seen by Dr. Wesley Canfield ("Dr. Canfield").[9]  See Am. Compl. at 4.  Dr. Canfield submitted a referral for a consultation with an endocrinologist and, in March 2011, Williams saw Dr. Steven Zygmont ("Dr. Zygmont").[10]  See id.  Dr. Zygmont recorded that Williams suffered from pain.  See id.  In September 2011, Williams was treated by Dr. Jessie Black-Galarza ("Dr. Galarza"), an endocrinologist.[11]  See id.  Dr. Galarza noted that Williams' condition was "painful[] and uncomfortable" and "refer[red him] to surgery.  Id. at 4.  On October 4, 2011, Whalen approved a non-formulary drug, Tamoxifen, to treat Williams' gynecomastia.  See id. at 5; Dkt. No. 97-3 at 67.

In January 2012, Williams was treated by Dr. Marisa Desimone ("Dr. Desimone"),[12] an endocrinologist, who noted that Williams' condition was painful and "unlikely to resolve on its own" and referred him for surgery.  Am. Compl. at 5.  In September 2012, Dr. Desimone informed Williams that his request for surgery was denied.  See id.; Dkt. No. 97-3 at 46-48.

In October 2012, Williams was transferred to Clinton C.F.  See Am. Compl. at 5.  Williams submitted a sick call request due to pain.  See id.  Williams was seen by Dr. Kang Maeng Lee ("Dr. Lee"),[13] who noted that Williams suffered from hypogonadism, hyperprolactinemia, and gynecomastia, and referred Williams for a consultation with an

---

[9] Dr. Canfield is not a defendant herein.
[10] Dr. Zygmont is not a defendant herein.
[11] Dr. Galarza is not a defendant herein.
[12] Dr. Desimone is not a defendant herein.
[13] Dr. Lee is not a defendant herein.

endocrinologist.  See id.; Dkt. No. 97-3 at 69.  Throughout his incarceration, Williams treated with Dr. Lee on eight or nine occasions.  See Dkt. No. 97-3 at 69.

In March 2013, Williams treated with Dr. Matthew Leinung ("Dr. Leinung"), an endocrinologist.[14]  See Am. Compl. at 5; Dkt. No. 97-3 at 53.  Williams treated with Dr. Leinung seven or eight times.  Dkt. No. 97-3 at 53.  Dr. Leinung reported that Williams' condition required surgery, that his condition was "not cosm[e]tic," was "symptomatic and painful," and placed Williams on Tamoxifen to remove breast tissue.  Am. Compl. at 5.

On September 4, 2013, Nurse Practitioner Catherine Bushey-Calley ("Bushey-Calley")[15] referred Williams for a consultation with an endocrinologist due to pain in his breast and a history of gynecomastia.  See Am. Compl. at 5.  Ms. Bushey-Calley submitted another request for a mastectomy due to "problems with gynecomastia since youth" that had worsened.  Id. at 5-6.  She noted that the "M.D. [f]eels that treating him surgically is the only option[.]"  Id.  Ms. Bushey-Calley also reported that Williams was approved for "block showers for security reasons."  Id. at 6.  On September 12, 2013, Whalen responded that he was "unable to approve" surgery and advised Ms. Bushey-Calley that she needed to "explain painful circumstances."  Id. at 6.  On September 17, 2013, "per [KEPRO]," Whalen approved a consultation with Dr. Leinung.  Id.; Dkt. No. 97-3 at 58.

On November 21, 2013, Williams was treated by Dr. Leinung who reported "failed Tamoxifen (did not tolerate) [c]learly did little to breast size.  This requires

---

[14] During Williams' deposition, counsel for defendants mistakenly referred to Dr. Leinung as a defendant (see Dkt. No. 97-3 at 40, 57), however, Dr. Leinung was not named as a defendant in the original complaint or amended complaint.
[15] Bushey-Calley is not a defendant herein

surgical removal, not cosmetic.  This is [a] significant deformity[,] request GSC Eval [sic] for surgical intervention."  Am. Compl. at 6.  On November 26, 2013, KEPRO and Whalen denied the request for surgery and noted, "unable to approve per MCG Guidelines."  Id.; Dkt. No. 97-3 at 59-60.

On December 2, 2013, the Inmate Grievance Resolution Committee ("IGRC") received a grievance from Williams (CL-64811-13), dated November 25, 2013, claiming that "DOCCS is being deliberately indifferent" to his serious medical needs and requested "that DOCCS be made to compl[]y" with the recommendations of "several specialists" "to have [ ] breast tissue removed in a surgical procedure due to [ ] excruciating pain."  Dkt. No. 97-5 at p. 4.

On December 3, 2013, Whalen contacted Ms. Bushey-Calley and informed, her that "nowhere in the consult was pain discussed."  Am. Compl. at 6.  Ms. Bushey-Calley replied that "[t]hey clearly documented that due to size and increased pain they felt the only treatment would be surgical."  Id. a 6-7.  Defendant Devlin-Varin answered, on behalf of Whalen, and advised that Williams "ha[d] a grievance and is complaining of 'excruciating breast pain.'  It has been denied again, [b]ut they are asking for more information."  Am. Compl. at 7; Dkt. No. 97-3 at 61.

On December 5, 2013, Ms. Bushey-Calley and Vonda Johnson ("Johnson"),[16] the Clinton C.F. Health Administrator, submitted another referral for surgery stating that "long standing [history] breast pain and tenderness worse" and that "they strongly believe that surgery is his only option.  He is long standing an[d] getting much worse . . . not cosmetic significant deformity."  Am. Compl. at 7; Dkt. No. 97-3 at 62.  On

---

[16] Johnson is not a defendant herein.

December 6, 2013, Whalen denied the request for surgery noting that he was "unable to approve [. . .] no clear need [. . .] defer as per [KERPO] MD."  Am. Compl. at 7.

On December 19, 2013, Williams' appealed his grievance to the Superintendent.  See Am. Compl. at 11.  On January 13, 2014, the Superintendent "accepted the grievance to the extent that [plaintiff] [] followed the proper channels to resolve his issue thought the desire outcome has not yet been achieved."  Id. at 11-12.  From 2009 until 2013, Williams attended approximately twenty-five to thirty medical appointments.  See Dkt. No. 97-3 at 70-71.  In May 2014, KERPO denied another referral for surgery.  See Am. Compl. at 7.  In 2019, Williams underwent breast reduction surgery at Albany Medical Center Hospital.  See Dkt. No. 97-3 at 19.

### B. Procedural History

In April 2014, Williams commenced this action in the United States District Court for the Southern District of New York ("Southern District") against Koenigsmann, Acrish, the Regional Medical Director of Green Haven C.F., and Dr. Bernstein.  See Dkt. No. 2.  In lieu of filing an answer, the named parties moved to dismiss the complaint.  See Dkt. No. 25.  In an Opinion & Order filed on July 16, 2015, the Southern District denied the motion and directed the then-named defendants to file an answer.  See Dkt. No. 34.  On July 27, 2015, they filed an answer.  See Dkt. No. 36.

On November 4, 2015, Williams filed a motion to amend the complaint.  See Dkt. No. 44.  In relevant part, plaintiff sought to add KEPRO, Whalen, and Devlin-Varin as defendants.  See id. at 1.  In an Opinion & Order filed on June 10, 2016, the Southern District granted the motion and accepted the amended complaint as the operative

pleading. <u>See</u> Dkt. Nos. 50 and 51. On October 18, 2016, KEPRO filed an answer to the amended complaint. <u>See</u> Dkt. No. 58.

In lieu of an answer to the amended complaint, defendants Dr. Bernstein, Acrish, Koenigsmann, Whalen, and Devlin-Varin moved to dismiss the amended complaint as to the Green Haven C.F. defendants pursuant to Fed. R. Civ. P. 12(b)(6) and to dismiss or transfer the remaining claims to the United States District Court for the Western District of New York ("Western District") or Northern District of New York ("Northern District"). <u>See</u> Dkt. No. 79. In an Opinion & Order filed on March 10, 2021, the Southern District dismissed Williams' claims against Dr. Bernstein and Acrish for failure to state plausible Eighth Amendment deliberate indifference claims. <u>See</u> Dkt. No. 83 at 11. The Southern District transferred the remaining Eighth Amendment claims against Koenigsmann, KEPRO, Whalen, and Devlin-Varin to the Northern District. <u>See</u> <u>id.</u> at 14. On March 24, 2021, defendants Devlin-Varin, Koenigsmann, and Whalen filed an answer to the amended complaint. <u>See</u> Dkt. No. 86. On March 25, 2021, the Court issued a Mandatory Pretrial Discovery and Scheduling Order directing the parties to complete discovery on or before September 27, 2021, and to file dispositive motions on or before November 25, 2021. <u>See</u> Dkt. No. 87. On September 9, 2021, the Court issued an order extending the discovery deadline until October 27, 2021. <u>See</u> Dkt. No. 93.

On September 28, 2021, Williams appeared at a deposition. <u>See</u> Dkt. No. 97-3. On November 22, 2021, defendants Koenigsmann, Whalen, and Devlin-Varin filed the present motion pursuant to Fed. R. Civ. P. 56 seeking summary judgment and dismissal of all claims against them. <u>See</u> <u>generally</u> Dkt. No. 97.

### III. Discussion[17]

Williams contends that defendants were deliberately indifferent to his medical needs in violation of his Eighth Amendment rights by failing to provide the care prescribed by his medical providers.  See generally Am. Compl.  Defendants argue that they are entitled to judgment as a matter of law because Williams cannot establish that defendants were deliberately indifferent to his serious medical needs.  See Dkt. No. 97-1 at 6-9.  Defendants also argue summary judgment is warranted because they were not personally involved in any constitutional violation.  See id. at 10-13.  Defendants alternatively argue that they are entitled to qualified immunity.  Id. at 14-15.

### A.  Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it is supported by affidavits or other evidence, and the moving party is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56(a).  The moving party bears the burden of demonstrating the absence of disputed material facts by providing the Court with portions of pleadings, depositions, and affidavits which support the motion.  See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 317, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party.  See Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing a genuine issue for trial.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586

---

[17] Unpublished decisions cited within this Report-Recommendation & Order have been provided to plaintiff.

(1986).  For the Court to grant a motion for summary judgment, it must be apparent that

no rational finder of fact could find in favor of the non-moving party.  See Gallo v.

Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must

afford the non-movant special solicitude.  See Triestman v. Federal Bureau of Prisons,

470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is
> entitled to "special solicitude," . . . that a pro se litigant's submissions must
> be construed "liberally,". . . and that such submissions must be read to
> raise the strongest arguments that they "suggest," . . . .  At the same time,
> our cases have also indicated that we cannot read into pro se submissions
> claims that are not "consistent" with the pro se litigant's allegations, . . . or
> arguments that the submissions themselves do not "suggest," . . . that we
> should not "excuse frivolous or vexatious filings by pro se litigants," . . .
> and that pro se status "does not exempt a party from compliance with
> relevant rules of procedural and substantive law" . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant,

537 F.3d 185, 191–92 (2d Cir. 2008).

## B. Personal Involvement

"It is well settled in this Circuit that 'personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983.'"

Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield,

950 F.2d 880, 885 (2d Cir. 1991)) (additional citation omitted).  "If the defendant is a

supervisory official, a mere 'linkage' to the unlawful conduct through 'the prison chain of

command' (i.e., under the doctrine of respondeat superior) is insufficient to show his or

her personal involvement in that unlawful conduct."  Coleman v. Racette, No. 9:18-CV-

0390 (MAD/CFH), 2021 WL 4312392, at *5 (N.D.N.Y. May 27, 2021) (quoting Polk

Cnty. v. Dodson, 454 U.S. 312, 325 (1981)), report and recommendation adopted, 2021

WL 3508342 (N.D.N.Y. Aug. 10, 2021) (additional citation omitted).  Instead, "a plaintiff

must plead and prove 'that each Government-official defendant, through the official's

own individual actions, has violated the Constitution.'"  Tangreti v. Bachman, 983 F.3d

609, 618 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)).  "The

violation must be established against the supervisory official directly."  Id.  Thus, in this

case, to avoid summary judgment, Williams must establish that each defendant violated

the Eighth Amendment by his or her "own conduct, not by reason of [his or her]

supervision of others who committed the violation" and may not "rely on a separate test

of liability specific to supervisors."  Id. at 619 (citations omitted).

### 1.  Whalen

Williams alleges that Whalen was personally involved because he rendered the

decision to deny Williams' requests for surgery.  See Am. Compl. at 8; Dkt. No. 97-3 at

58-60.  It is undisputed that Whalen did not speak or meet with, or treat Williams;

however, Whalen has not carried his burden of presenting evidence to support his claim

that no material issue of fact exists as to his personal involvement.  In support of

summary judgment, Whalen provided a declaration.  Dkt. No. 97-6.  The statements

made in the declaration contradict his claims that he was not personally involved.

Whalen asserts that, as DOCCS' Regional Medical Director, he was responsible for

overseeing medical personnel to "ensure incarcerated individuals were receiving

optimal care[.]"  Id. at ¶¶ 5-6.  With respect to Williams, Whalen admits he reviewed "the

Request and Report of Consultation for a procedure" that he deemed "cosmetic in

nature" and "evaluat[ed] the records provided to [him] and us[ed his] professional

judgment in rendering a decision."  Id. at ¶¶ 10, 11.  Whalen offered no other

information and did not attempt to support his conclusory claim that he was not personally involved with any documentation or exhibits.  See generally id.  Whalen failed to provide a copy of the Request and Report of Consultation, he did not indicate who generated the report, he did not provide a summary of the contents of the report, and he did not identify or provide copies of records that he reviewed, or copies of his decision(s).  See generally Dkt. No. 97.

Thus, the Court finds that an issue of fact exists with respect to Whalen's involvement in various stages of the decision-making process and his personal involvement in the alleged constitutional violations.  See Celotex Corp., 477 U.S. at 323. Accordingly, it is recommended that defendants' motion be denied on this ground.

### 2. Devlin-Varin

Viewing the facts in the light most favorable to Williams, defendants have failed to show the absence of a genuine issue of material fact to warrant summary judgment on the issue of whether Devlin-Varin was personally involved in any constitutional violations.  Williams and Devlin-Varin posit contrary recitations of fact with regard to Devlin-Varin's involvement in Williams' medical treatment.

Devlin-Varin, a Nurse Practitioner at Clinton C.F., provided a declaration in support of the motion.  Dkt. No. 97-5 at ¶ 7.  Devlin-Varin avers she was "not involved in the decision-making process for approving or denying" the mastectomy or in Williams' treatment for gynecomastia.  Id. at ¶ 10.  Rather, she claims that her "sole involvement" with Williams was limited to an investigation into his grievance regarding his need for a mastectomy.  Id. at ¶ 9.  Conversely, Williams testified that Devlin-Varin, "had all the information - - with her being a nurse" and failed to give the information to "the people in

14

Albany" thereby "hindering [him] from getting proper treatment."  Dkt. No. 97-3 at 61.

Upon further questioning at his deposition, Williams testified:

> Q.  How do you know that she failed to do that?
>
> A.  Because I have documentation.
>
> Q.  And who did she fail to provide that information to?
>
> A.  All right, hold on. N.P. Calley -- whatever. All right, this is -- the information says on December 5th, 2013, Nurse Practitioner Calley and M.D. Vonda Johnson put plaintiff in for another referral for surgery, stating longstanding breast pain and tenderness worse.  It says they strongly believe that surgery is his only option.  He is only standing -- he is longstanding, and getting much worse.  Much worse is referring to the breast size, not cosmetic significant deformity, right.  So it says -- you know, this is some of the information that she could have given to whoever in Albany that deals with the healthcare proxy, or [KEPRO]
>
> Q.  So is the extent of her involvement a failure to relay information to other people? Did she ever kind of treat you physically, or seen you?
>
> A.  Yes, she did.
>
> Q.  When did she see you?
>
> A.  She'd seen me basically almost days before this, when she sent me out to actually see the specialist. And I know personally that she had personal -- that she knew the extent of my pain, and what was going on, but she failed to relay that message, hindering me from getting treatment.  And everything is documented.

Id. at 62-63.

This competing evidence rests on the credibility of Williams on one hand and Devlin-Varin on the other.  In these circumstances, the governing law that the evidence must be viewed in the light most favorable to the non-moving party leaves no choice but to credit Williams' version of the events for purposes of this motion.  See In re Dana Corp., 574 F.3d 128, 152 (2d Cir. 2009) (holding that a court faced with a motion for

summary judgment must draw all reasonable inferences in favor of the non-moving party and may not make credibility determinations or weigh the evidence, functions which are reserved to a jury and not a judge) (collecting cases).

In support of the motion for summary judgment, defendants also rely on a copy of Williams' one-page grievance.  See Dkt. No. 97-5 at p. 4.  However, the document does not resolve the issue of Devlin-Varin's personal involvement.  See id.  To wit, defendants did not include: (1) Williams' medical records; (2) documents related to Devlin-Varin's investigation into plaintiff's grievance; (3) the IGRC response; (4) plaintiff's appeal; and (5) the Superintendent's decision on the grievance.  See generally Dkt. No. 97.

Therefore, a triable issue of fact exists regarding Devlin-Varin's personal involvement in decisions related to Williams' medical treatment.  Accordingly, the undersigned recommends denying defendants' motion for summary judgment on this ground.

### 3.  Koenigsmann

Williams claims Koenigsmann was negligent in his supervision of subordinates and created a policy of refusing to allow inmates to have mastectomies.  See Am. Compl. at 7.  At the relevant time, Koenigsmann was employed by DOCCS as Deputy Commissioner/Chief Medical Officer.  See Dkt. No. 97-4 at ¶ 5.  Koenigsmann attests that he did not create a "blanket policy" against providing male inmates with mastectomies.  Id. at ¶ 8.  Koenigsmann avers that he did not speak to or treat Williams, he was never personally involved in Williams' medical treatment, that he did not make

medical decisions related to his treatment, and that he did not resolve disputes between Williams and medical professionals.  Id. at ¶¶ 9, 23.

Upon review, the undersigned finds that plaintiff has failed to raise a triable issue of fact with respect to Koenigsmann's personal involvement.  First, the record lacks any evidence to support Williams' conclusory allegation of any unconstitutional policy or custom related to mastectomies.  See Am. Compl. at 7.  Second, Williams has not proffered any evidence suggesting that Koenigsmann was personally involved any alleged constitutional violation.  See generally Am. Compl.  Indeed, Williams admitted that he never met with Koenigsmann and never had a conversation with Koenigsmann.  See Dkt. No. 97-3 at 42.  Although Williams claimed that Koenigsmann was "the head doctor" and had "personal knowledge" for years and knew, or should have known, that Williams was supposed to receive treatment, Dkt. No. 97-3 at 40, "[t]his statement indicates clearly that Koenigsmann is being sued merely based on his supervisory position," and does not establish personal involvement for purposes of § 1983.  Palompelli v. Smith, No. 20-CV-8070 (CS), 2022 WL 624421, at *3 (S.D.N.Y. Mar. 3, 2022) (dismissing Eighth Amendment claim against Koenigsmann based upon the assertion that he was "in charge overall"); see also Olivio v. United States, No. 20-CV-231 (RPK/MMH), 2022 WL 409720, at *5 (E.D.N.Y. Feb. 10, 2022) (explaining that the plaintiff "cannot state a claim" for deliberate medical indifference based on allegation that the prison officials were liable "because they were responsible as supervisors for formulating, adopting, and reviewing policies relating to the medical care of inmates.") (internal quotation marks omitted) (citing Tangreti, 983 F.3d at 618).

Finally, Williams does not allege, nor does the record support any claim that Koenigsmann reviewed Williams' medical records or took any action with respect to Williams' requests for surgery.  See McTerrell v. Koenigsmann, No. 18-CV-1028 (JLS/HKS), 2021 WL 5772484, at *11 (W.D.N.Y. Aug. 18, 2021) (dismissing deliberate indifference claims against Koenigsmann where there were no allegations that Koenigsmann reviewed the plaintiff's complaints or that took action on the plaintiff's complaints), report and recommendation adopted, 2021 WL 4549168 (W.D.N.Y. Oct. 5, 2021).  Thus, the undersigned recommends that the Eighth Amendment claims against Koenigsmann be dismissed on this ground.  See Gutierrez-Pinto v. Annucci, No. 20-CV-4490 (CS), 2022 WL 523628, at *4 (S.D.N.Y. Feb. 22, 2022) (concluding that the plaintiff failed "to describe an actual policy . . . that could be construed as evidence of [the defendant's] individual action.  And obviously [the defendant] cannot be deliberately indifferent to events of which he is unaware.").

## C.  Deliberate Medical Indifference Claims

The Eighth Amendment forbids the infliction of "cruel and unusual punishments" on those convicted of crimes, "which includes punishments that involve the unnecessary and wanton infliction of pain."  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citing Gregg v. Georgia, 428 U.S. 153, 173 (1976)) internal quotation marks omitted).  "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  An Eighth Amendment claim for medical indifference, has two necessary components, one objective and the other subjective.  See Hathaway v.

Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).  The objective component requires the plaintiff to demonstrate that his alleged medical need is "sufficiently serious." Hathaway, 37 F.3d at 66 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  The subjective component requires a showing that the defendant has acted "with a sufficiently culpable state of mind."  Id. (citation omitted).

## 1. Objective Component

Defendants argue that Williams received adequate treatment for his gynecomastia and thus, there is no issue of fact with respect to the objective prong of the Eighth Amendment analysis.  See Dkt. No. 97-1 at 7-8.

For an inmate to state a cognizable claim of deliberate indifference, he must make a showing of serious illness or injury.  See Smith v. Carpenter, 316 F.3d 178, 184-85 (2d Cir. 2003).  "The serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain."  Charles v. Orange Cnty., 925 F.3d 73, 86 (2d Cir. 2019) (citation omitted).  "Determining whether a deprivation is an objectively serious deprivation entails two inquiries." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006).  First, the Court must determine "whether the prisoner was actually deprived of adequate medical care."  Id.  Inmates "do not have a right to chose [sic] a specific type of treatment."  Veloz v. N.Y., 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004).  "Prison officials are not obligated to provide inmates with whatever care the inmates desire.  Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.'"  Jones v. Westchester Cnty. Dep't of Corrs., 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008) (citation omitted). However, a prison official may be held liable "if he knows that inmates face a substantial

risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). Second, the Court must determine "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Salahuddin, 467 F.3d at 280. [I]f the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious. Factors relevant to the seriousness of a medical condition include[:]"

> whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain. In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower. For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone. Thus, although we sometimes speak of a "serious medical condition" as the basis for an Eighth Amendment claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability.

Id. (internal citation and quotation marks omitted).

Further, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment claim." Chance, 143 F.3d at 703. Therefore, any "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of intervention, are not

20

adequate grounds for a Section 1983 claim." <u>Sonds v. St. Barnabas Hosp. Correctional Health Servs.</u>, 151 F. Supp. 2d 303, 312 (S.D.N.Y.2001).  A medical "professional's decision not to administer a specific medical test, regardless of a prisoner's disagreement with that decision, 'is a classic example of the type of medical judgment that is given judicial deference, and does not form the basis of a deliberate indifference claim.'" <u>Curtis v. Williams</u>, No. 11-CV-1186, 2013 WL 1915447, at *7 (S.D.N.Y. May 9, 2013) (quoting <u>Verley v. Goord</u>, 02-CV-1182, 2004 WL 526740, at *12 (S.D.N.Y. Jan. 23, 2004)) (citing <u>Estelle</u>, 429 U.S. at 107) ("[A] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.")).

Based on the record, "a reasonable doctor or patient" would find Williams' medical condition "important and worthy of comment." <u>Salahuddin</u>, 467 F.3d at 280. From 2009 until 2013, Williams attended approximately twenty-five to thirty medical appointments for complaints related to gynecomastia. <u>See</u> Dkt. No. 97-3 at 70. Williams was treated by DOCCS medical providers including Nurse Practitioners Acrish and Bushey-Calley, Dr. Bernstein (a physician at Green Haven C.F.), Dr. Canfield (the Southport C.F. medical director),[18] and Dr. Lee. <u>See</u> Am. Compl. at 4-6.  The DOCCS employees referred Williams to outside specialists for consultations and he attended at least six appointments with various endocrinologists including Dr. Zygmont, Dr. Desimone, Dr. Galarza, and Dr. Leinung.  After each visit, the specialists noted Williams suffered from pain and, Drs. Galarza, Desimone, and Leinung specifically recommended surgery. <u>See</u> Am. Compl. at 3-5.  Indeed, Dr. Leinung opined that the surgery was "not cosmetic." <u>Id.</u> at 6.  After Williams' initial request for surgery was

---

[18] <u>See</u> <u>Ruggiero v. Canfield</u>, 14-CV-307, 2020 WL 7631890, at *1 (W.D.N.Y. Nov. 9, 2020).

denied, DOCCS' Nurse Bushey-Calley and DOCCS' Health Administrator Johnson submitted another request for surgery due to Williams' history of breast pain and his worsening condition.  See id. at 6-7.  Ms. Bushey-Calley and Johnson also opined that Williams did not suffer from a cosmetic deformity.  See id. at 7.  Based upon the record before the Court, a reasonable "doctor or patient would perceive" Williams' gynecomastia "worthy of comment or treatment."  Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003).

Williams testified that due to size of his breasts,[19] he was involved in physical altercations at various facilities.  See Dkt. No. 97-3 at 21.  Williams was harassed, taunted, and subjected to sexual advances by other inmates.  See Dkt. No. 97-3 at 21-22, 26, 29-30; Am. Compl. at 9.  Williams was compelled to avoid showering and forced to clean his body with a rag to avoid harassment.  See Am. Compl. at 10.  In some instances, Williams would shower while partially clothed.  See id. at 9.  Williams could not exercise, play basketball, lift weights, or jog, due to the size and pain in his breasts. See Dkt. No. 97-3 at 22, 31-32; Am. Compl. at 9-10.  Williams, who is a Muslim, could not bow or pray correctly due to pain in his chest.  See Dkt. No. 97-3 at 33-34; Am. Compl. at 9.  Williams also testified that he suffers from "chronic and substantial pain" and claims that, during the relevant time, he was in pain, "the majority of the time," experienced shooting pain and constant pain, and suffered mental anguish.  Dkt. No. 97-3 at 25-26, 32.

Although Williams "repeatedly sought and received medical care" from DOCCS' medical personnel and outside specialists, "a reasonable juror could conclude that

---

[19] Williams claims that his breasts have grown to a "c-cup."  Am. Compl. at 9.

failure to treat [Williams'] gynecomastia and related pain could result in 'further significant injury' and the 'unnecessary and wanton infliction of pain.'" Fryman v. Traquina, No. 07-CV-2636 (JAM/DAD), 2009 WL 5199257, at *9 (E.D. Cal. Dec. 23, 2009) (finding that the plaintiff's gynecomastia and related pain constituted an objective, serious need for medical treatment). Thus, viewing the facts in the light most favorable to Williams, he has proffered sufficient evidence to raise genuine issues of material fact as to the objective prong of the Eighth Amendment analysis to require resolution by a jury.

### 2. Subjective Component

Construing the claims liberally, Williams asserts that defendants refused to approve surgery with the knowledge that Williams suffered from a serious medical need, based upon information from KERPO and monetary decisions. Am. Compl. at 8; Dkt. No. 97-3 at 39. Defendants argue that plaintiff's claims amount to a disagreement over proper treatment, which does not create a constitutional claim. See Dkt. No. 97-1 at 9.

A prison official acts with a sufficiently culpable state of mind when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "Deliberate indifference is a mental state equivalent to subjective recklessness" which "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Salahuddin, 467 F.3d at 280 (citations omitted).

"[A] deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians." Johnson v. Wright, 412 F.3d 398, 404 (2d Cir. 2005) (citation omitted); see also Rodriguez v. Fed. Bureau of Prisons, No. 9:10-CV-1013 (LEK/TWD), 2012 WL 6965109, at *10 (N.D.N.Y. Nov. 30, 2012) (finding allegations concerning the defendant's failure to approve the plaintiff's knee surgery, despite unanimous medical support for the surgery, and complaints of pain, were sufficient to suggest deliberate indifference), report and recommendation adopted, 2013 WL 375537 (N.D.N.Y. Jan. 30, 2013). Jurors may find deliberate indifference where a defendant "reflexively rel[ies] on the medical soundness" of guidelines or a policy "when they had been put on notice that the medically appropriate decision could be, instead, to depart" from the subject guidelines or policy. Johnson, 412 F.3d at 406.

In Fryman, a case with strikingly similar facts, the plaintiff suffered from gynecomastia and submitted repeated requests for medical care while incarcerated. See Fryman, 2009 WL 5199257, at *13. The plaintiff was treated by California State Prison doctors, who submitted requests for consultations and referred the plaintiff for mammograms. See id. The outside specialists recommended surgery and the plaintiff submitted inquiries and grievances related to the status of his surgery. See id. at *11. In response to the plaintiff's grievances and requests for surgery, the defendants denied the request noting "such procedure is considered cosmetic in nature." Id. at *12. The defendants moved for summary judgment and dismissal of the Eighth Amendment deliberate medical indifference claims. See id. at *1. The court found that the plaintiff had established that he suffered from a serious medical need. See id. at *9. With

respect to the subjective prong of the analysis, the court found that the evidence suggested more than a mere difference of opinion over the appropriate course of treatment.  See id. at *12.  The court noted that the defendants were aware of the plaintiff's condition, that the condition caused him increased pain, and that "two outside specialists" recommended surgery.  Id. at *13.  The court found no support for the decision to deny the procedure as "cosmetic" when it appeared "medically necessary" in light of the evidence.  Id.  The court concluded, "[u]nder these circumstances, a reasonable juror could find that, based on the evidence before the court, the defendants ignored [the] plaintiff's serious medical needs as well as the recommendations of two medical specialists thereby violating [the] plaintiff's right to adequate medical care under the Eighth Amendment."  Id. at *13 (citations omitted).  While the defendants argued that they had no "actual knowledge of a substantial risk of serious harm," the court refused to accept their statements about their "own state of mind" on summary judgment.  Id.  Rather, the court found, "a reasonable juror could find that, based on the evidence before the court, plaintiff's medical needs were so obvious that [the] defendants . . . should have been aware of any substantial risk of injury or harm to [the] plaintiff."  Id. at *14.

    Similarly, here, based on Williams' deposition testimony and the allegations in the amended complaint, which defendants do not challenge, defendants denied plaintiff's requests for a mastectomy despite documented and repeated complaints of increased pain and overwhelming medical support for surgery from DOCCS' nurses, DOCCS' physicians, and outside specialists.  Defendants argue that plaintiff's claim amounts to no more than a difference of opinion however, as discussed supra, the

record does not contain any information related to what defendants considered in denying treatment, what factors defendants considered, or an explanation for the decision to reject Williams' requests for surgery.  Rather, the record shows that defendants rejected at least two requests for surgery despite recommendations from outside specialists and Williams' prison medical providers.  Moreover, defendants' contention that Williams received "adequate" treatment is unsupported by the record and largely disputed by Williams.  Williams testified that he received over-the-counter Ibuprofen for his pain, Tamoxifen, which he could "not tolerate," and testosterone injections, which Williams claims was prescribed to treat a different medical condition, not gynecomastia.  Dkt. No. 97-3 at 49; see Rush v. Artuz, No. 00-CV-3436 (LMM), 2004 WL 1770064, at *10 (S.D.N.Y. Aug. 6, 2004) (finding a question of fact as to whether the defendants' decisions to deny surgery despite recommendations were reasonable and whether treatment; i.e., the use of a wrist splint, was adequate).  From the record as it presently exists, a jury could conclude that defendants acted "reflexively" and applied KERPO recommendations without properly investigating Williams' condition "or applying [their] own medical judgment" to Williams' condition.  Cf. Watson v. Wright, No. 9:08-CV-62 (NAM/ATB), 2011 WL 4527789, at *10 (N.D.N.Y. Aug. 4, 2011) (awarding summary judgment to the defendants where the record included "differences of opinion among the treating and consulting physicians[,]" where the defendant "became actively involved in [the] plaintiff's treatment and reviewed his medical records" and "appl[ied] his own medical judgment to the patient's particular situation"), report and recommendation adopted, 2011 WL 4528931 (N.D.N.Y. Sept. 28, 2011); see Rodriguez v. Manenti, 606 F. App'x 25, 28 (2d Cir. 2015) (summary order)

("a jury might draw significance from [the d]efendant's initial failure to provide any explanation for rejecting [the p]laintiff's request for surgery and determine that this denial did not amount to a mere difference of medical opinion[]").  Drawing all inferences in plaintiff's favor, there are triable issues of fact with respect to whether this case involves "more than a mere difference of opinion over the appropriate course of treatment."  Fryman, 2009 WL 5199257, at *11 (citations omitted).

Based upon the record before the Court, Williams has presented a genuine issue of fact with respect to the subjective component of the deliberate indifferent analysis. Accordingly, defendants' motion on this ground should be denied.

### D.  Qualified Immunity

Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotation marks and citation omitted); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991) (citing Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990)).  "The Court has discretion to determine the order in which it will address the inquiries required when assessing the applicability of qualified immunity."  Mitchell v. Annucci, No. 9:19-CV-0718 (MAD/ML), 2022 WL 687274, at *17 (N.D.N.Y. Jan. 20, 2022) (citing Johnson v.

Perry, 859 F.3d 156, 170 (2d Cir. 2017), report and recommendation adopted, 2022 WL 445039 (N.D.N.Y. Feb. 14, 2022) (additional citation omitted).

Here, defendants' argument in support of the qualified immunity defense is one paragraph long, entirely conclusory, and unsupported by any facts. See Dkt. No. 97-1 at 15. In the first instance, the Court finds that Williams has presented genuine issues of material fact as to his Eighth Amendment claims that Whalen and Devlin-Varin were deliberately indifferent to his medical needs.

Next, it is well established that, at the time Williams was treated for gynecomastia, "[a] claim of deliberate indifference to serious medical needs in violation of the Eighth Amendment alleges the violation of a clearly established right." Burton v. Lynch, 664 F. Supp. 2d 349, 368 (S.D.N.Y. 2009) (citing Lloyd v. Lee, 570 F.Supp.2d 556, 570 (S.D.N.Y. 2008)).  Thus, because a reasonable jury could conceivably accept plaintiff's claims, defendants are not entitled to qualified immunity for the alleged Eighth Amendment violations.  Accordingly, it is recommended that defendants' motion be denied on this ground.


### IV.  Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**ORDERED**, that the Clerk of the Court is directed to amend the caption to substitute KEPRO for Aps; and it is further

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 97) be: **GRANTED** as to Koenigsmann for lack of personal involvement and **DENIED** in all other respects; and it is further

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 5, 2022
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge